```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                       AT BLUEFIELD
```

CAI DESIGN, INC., a New
York corporation,

    Plaintiff,

v.                                                CIVIL ACTION NO. 1:20-00242

PHOENIX FEDERAL #2 MINING, LLC,
a West Virginia limited liability
company; PHOENIX ENERGY RESOURCES,
LLC, a West Virginia limited
liability company; and JOHN F.
HALE, JR, an individual,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the court is the summary judgment motion of plaintiff Cai Design, Inc. (ECF No. 57.) Also pending before the court are the motions of defendant John F. Hale, Jr. ("Hale") (1) for leave to file an amended answer to the complaint (and counterclaim), (ECF No. 32); (2) for leave to file a cross-motion for summary judgment, (ECF No. 64); and (3) for summary judgment, (ECF No. 65). For the reasons that follow, Hale's motions for leave to file an amended answer and for leave to file a summary judgment motion are **GRANTED**, but the parties' summary judgment motions are both **DENIED**.

I.   **Background**

In 2018, plaintiff made a secured loan of $1.75 million to defendant mining corporation Phoenix Federal #2 Mining, LLC, ("Phoenix Federal"). Thereafter, it became apparent that Phoenix Federal would default. But there was a potential opportunity for a related company, defendant Phoenix Energy Resources, LLC ("Phoenix Energy"), to secure $5.5 million in new funding from a third party, some of which was to be earmarked to repay plaintiff.[1] Helping Phoenix Energy secure that funding apparently sounded more desirable to plaintiff than awaiting default and pursuing ordinary remedies under contract law.

Accordingly, plaintiff made a subsequent loan of $55,000[2] to both Phoenix corporations, pursuant to an "Addendum" agreement. It alleges that the owner of the Phoenix corporations, Hale, personally guaranteed both the first loan of $1.75 million and the subsequent loan of $55,000. This is so, plaintiff says, by the plain terms of the Addendum. Hale says that he personally

---

[1] Plaintiff has secured a default judgment against the Phoenix defendants and has recovered some of the amount due on that judgment. (See ECF Nos. 24, 79, 81.)

[2] The Addendum called for $55,000, but it appears undisputed that plaintiff disbursed $65,000 pursuant to the agreement and that Hale personally guaranteed, at minimum, the $65,000 disbursed. To avoid confusion, however, the court will use the $55,000 figure.

guaranteed the second loan ($55,000) but not the first loan ($1.75 million).

The interpretation of the Addendum is what plaintiff and Hale now dispute. It reads as follows:

> This is an agreement made between Cai Design Inc (hereinafter referred to as "Cai" and Phoenix Federal #2 Mining, LLC/Phoenix Energy Resources LCC (hereinafter referred to as "Phoenix) that Cai is going to help Phoenix to advance the fee of 1% of the requested loan ($5,500,000.00) and pay directly to Kennedy Funding Financial as per attached letter of interest. The Fee as well as the note of $1,750,000.00 dated Nov 8th, 2018) will be paid in full at closing of the loan directly from Kennedy Funding Financial.
>
> <u>This addendum</u> is also guaranteed by John Hale, the owner of Phoenix Federal #2 Mining, LLC/Phoenix Energy Resources LLC if for any reason the fee <u>and</u> note are not paid either at the closing of the loan or the note maturity date.

(ECF No. 57-4 (emphasis added).) Plaintiff drafted the Addendum. It is signed by Hale and Bessie Yifei Cai ("Ms. Cai").

II. **<u>Summary Judgment Standard</u>**

Federal Rule of Civil Procedure 56(a) provides:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The moving party has the burden of establishing that there is no genuine issue as to any material fact. <u>Celotex Corp. v.</u>

Catrett, 477 U.S. 317, 323 (1986).  This burden can be met by showing that the nonmoving party has failed to prove an essential element of the nonmoving party's case for which the nonmoving party will bear the burden of proof at trial.  Id. at 322.  This is so because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

Once there is a proper challenge to the sufficiency of the nonmoving party's evidence on an essential element, the burden shifts to the nonmoving party to produce sufficient evidence for a jury to return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.  The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find, by a preponderance of the evidence, that the plaintiff is entitled to a verdict . . . .

Id. at 252.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Id. at 250-51.  All reasonable inferences are to be drawn in the nonmoving party's favor.  See id. at 255.

### III. Discussion

#### a. Motions for Leave

Hale seeks leave to file (1) an amended answer and counterclaim and (2) a motion for summary judgment. Because Hale moved to amend his answer prior to the deadline in the court's scheduling order for amendments and because there is no indication that he acted in bad faith or that the amendment would be futile or prejudicial, the court will grant Hale's motion to amend. As to the summary judgment motion, the court finds that there is good cause to allow Hale to file the motion after the deadline in the court's scheduling order.

Concerning the first request for leave, it is undoubtedly within a district court's discretion to deny leave to amend an answer in certain circumstances. See Equal Rts. Ctr. v. Niles Bolton Assocs., 602 F.3d 597, 603 (4th Cir. 2010). Those circumstances, however, are limited. Ynclan v. Dep't of Air Force, 943 F.2d 1388, 1391 (5th Cir. 1991). The court must provide a "justifying reason," such as (1) prejudice to the opposing party, (2) bad faith by the moving party, or (3) futility of amendment. Equal Rts., 602 F.3d at 603. When a party seeks leave to amend and "justice so requires," the court should grant leave "freely." Fed. R. Civ. P. 15. Thus, "[a] motion to amend should be denied only where it would be prejudicial, there has been bad faith, or the amendment would be

5

futile." Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008); Hicks v. Transit Mgmt. of Asheville, Inc., No. 1:11CV94, 2011 WL 5335567, at *1 (W.D.N.C. Nov. 7, 2011) ("Absent a showing of undue delay, bad faith, futility, or prejudice to the opposing party, a court should grant a party leave to amend.").[3]

Hale was proceeding pro se when he filed his original answer and counterclaim.[4] He thereafter hired counsel, and his counsel obviously determined that he needed to amend his answer and counterclaim. Furthermore, Hale has been undergoing cancer treatment during this litigation, which he states has hindered his ability to defend himself. In the absence of a justifying reason for denying the motion, the court will grant Hale's motion to amend his answer and counterclaim.

---

[3] "Once the scheduling order deadline has passed, Rule 16(b)(4) requires a party to show 'good cause' before being granted leave to amend the pleadings, *in addition to* the showing required under Rule 15." Phillips & Stevenson, Rutter Group Prac. Guide: Fed. Civ. Pro. Before Trial, Ch. 15-A (2021) (citing Nourison Rug, 535 F.3d at 298) (emphasis in original). Here, because Hale moved for leave to file his amended complaint and counterclaim before the deadline in the court's original scheduling order, he need not establish "good cause" under Federal Rule of Civil Procedure 16(b)(4).

[4] Hale and the Phoenix defendants had sought an enlargement of time to file a responsive pleading, which the court denied because the Phoenix defendants, as corporations, could not proceed pro se and because, in any event, there was a lack of good cause. (See ECF No. 10.) As the deadline had not yet passed, Hale then filed a timely answer and counterclaim on his own behalf on June 23, 2020.

As to the second request for leave, "[e]ven when a motion for summary judgment is filed out of time, a district court may exercise its discretion to entertain the motion." Turner v. United States, 869 F. Supp. 2d 685, 688 (E.D.N.C. 2012). This discretion derives from district courts' "inherent authority to modify pre-trial procedural deadlines to serve the best interests of justice." Gomez v. Trustees of Harvard Univ., 676 F. Supp. 13, 15 (D.D.C. 1987).

Initially, the court notes that Hale diligently moved to amend the scheduling order once he retained counsel, citing his health issues, his previous lack of counsel, and a lack of prejudice to plaintiff.[5] The court, however, has not ruled on that motion. Specific to his current, narrower request to file a motion for summary judgment beyond the deadline, Hale suggests that "the issue of the personal guarantee can be decided by this Court as a matter of law and does not require a trial to evaluate alleged issues of material fact." (ECF No. 64.) Although the court disagrees, the court will allow Hale's summary judgment motion for the reasons stated in his earlier

---

[5] "A party's *retention of new counsel* is not, by itself, good cause to modify a scheduling order to permit filing dispositive motions after the scheduling order deadline." Phillips & Stevenson, Ch. 15-A (citing Buchanan Cty. v. Blankenship, 545 F. Supp. 2d 553, 555 (W.D. Va. 2008)) (emphasis in original). Similarly, hiring counsel after proceeding pro se is not, by itself, good cause.

7

motion and in the interest of judicial economy.  Hale's summary judgment motion is simply his opposition to plaintiff's summary judgment motion, restyled.  It is in the interest of judicial economy to resolve plaintiff's and Hale's summary judgment motions at once because the issue and arguments are identical.  Moreover, although plaintiff disputes the merits of Hale's motion, plaintiff does not raise specific objections as to why Hale should not be allowed to file it.  The court finds that there is good cause to grant Hale's motion for leave to file his cross-motion for summary judgment.

    **b. Motions for Summary Judgment**

"Whether a contract is ambiguous is a legal determination well suited for summary judgment."  <u>Orgill, Inc. v. Distribution Centers of Am. (WV), LLC</u>, 290 F. Supp. 3d 550, 553 (N.D.W. Va. 2017).  If the contract is ambiguous, the question becomes whether the extrinsic evidence bearing on the contract's interpretation (which includes any relevant pre-contract and post-contract conduct) is in dispute.  <u>See</u> <u>Harrell v. Cain</u>, 832 S.E.2d 120, 129 (W. Va. 2019).  An affirmative answer to both questions means that a trial is necessary.  <u>See</u> <u>id.</u>; <u>see also</u> <u>Fraternal Ord. of Police, Lodge No. 69 v. City of Fairmont</u>, 468 S.E.2d 712, 716 n.7 (W. Va. 1996) ("If an inquiring court concludes that an ambiguity exists in a contract, the ultimate resolution of it typically will turn on the parties' intent.

Exploring the intent of the contracting parties often, but not always, involves marshaling facts extrinsic to the language of the contract document. When this need arises, these facts together with reasonable inferences extractable therefrom are superimposed on the ambiguous words to reveal the parties' discerned intent.").

Under West Virginia law, a contract "is ambiguous when it is 'reasonably susceptible of two different meanings' or is 'of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning.'" Equinor USA Onshore Properties Inc. v. Pine Res., LLC, 917 F.3d 807, 813 (4th Cir. 2019) (quoting Payne v. Weston, 195 W.Va. 502, 466 S.E.2d 161, 166 (1995)). "Contract language may also be considered ambiguous if 'the agreement's terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meanings of words employed and obligations undertaken.'" Orgill, 290 F. Supp. 3d at 553 (quoting In re Joseph G., 589 S.E.2d 507, 512 (W. Va. 2003)).

Contracts must be read as a whole. Equinor, 917 F.3d at 813. Although ambiguous language is generally construed against the drafter, this canon of contract interpretation does not obviate the need to consider extrinsic evidence in cases of ambiguity. See Equinor, 917 F.3d at 817 n.4; see also 11

Williston on Contracts § 32:12 (4th ed.) (*contra proferentem* "said to be a rule of last resort").

The contract here is an "Addendum" to a promissory note. The Addendum advances a modest amount of additional funds ($55,000) for the stated purpose of helping the Phoenix defendants secure a $5.5 million loan from a third party. Although it is clear from the contract here that Hale was making a personal guarantee, it is unclear whether this guarantee extended to the previous loan or was limited to the new loan only. The contract here is ambiguous because it is reasonably susceptible of either interpretation. Unless the material extrinsic evidence is undisputed, a trial will be necessary for the court to weigh the evidence and determine what the ambiguous language means.

According to plaintiff, "Hale guaranteed to repay the Note and the Origination Fees in the event that either were not paid 'at the closing of the loan or the note maturity date.'" (ECF No. 68, at 4.) While this is a reasonable interpretation of the Addendum, it is not the only reasonable interpretation for at least two reasons.

First, Hale agreed to guarantee "[t]his addendum." What "[t]his addendum" means is subject to two reasonable interpretations. Because the Addendum references the original note, and because the stated purpose of the addendum was to

10

secure funding to pay off the note, the note is arguably considered part of "[t]his addendum." On the other hand, because the Addendum secured only $55,000, "[t]his addendum" could reasonably be understood as limited to the $55,000. That the Addendum did not alter plaintiff's rights concerning the impending default of the original note supports the latter view. What is more, a personal guarantee of only the $55,000 would theoretically be sufficient to accomplish the limited purpose of throwing good money after bad while simultaneously brightening the prospect of payment on the original note without litigation. In short, although plaintiff is reasonably willing to interpret "[t]his addendum" to encompass the original note and the Addendum funds, the court cannot conclude that this is the only reasonable interpretation.

Second, plaintiff's statement that Hale guaranteed the note and fees in the event "<u>either</u> were not paid" (emphasis added), is reasonable, but is not necessarily what the Addendum says. Instead, it says that Hale provides a guarantee if "the fee <u>and</u> the note are not paid" (emphasis added). This phrase is unclear. Read literally, it could reasonably be interpreted to mean that <u>both</u> the original funds and the addendum funds would have to go unpaid to activate the guarantee. This reading would favor Hale's argument that he guaranteed only the $55,000 because if plaintiff received payment of $55,000 or more, the

11

guarantee would not activate. Only if plaintiff received less than $55,000 (i.e., if neither was paid) would the personal guarantee activate to restore the status quo to the pre-Addendum state of affairs.[6] Alternatively, the language could mean that <u>unless</u> the <u>total</u> amount due (on both the original note and the Addendum funds) was paid, the guarantee would activate.[7]

The court is mindful that it should not strain to create ambiguity in contracts. Allowing plain language to govern parties' obligations is a sound rule that promotes freedom of contract. The court must insist, however, on clarity of contractual language before entering judgment on a contract without a trial. The lack of clarity here necessitates a trial unless the parties agree that the extrinsic evidence is not in dispute and provide a joint statement setting forth the relevant extrinsic evidence. If received by October 29, 2021, the court will consider revised summary judgment motions accompanying and

---

[6] Granted, it may not have restored the status quo completely, as plaintiff may have lost time otherwise spent trying to collect on the defaulted note and as the additional $55,000 could be lost despite Hale's personal guarantee. This just illustrates, though, that there are good arguments for either interpretation. The court does not decide which interpretation is better, only that there are two reasonable ones.

[7] All of this could have been avoided by specifying that Hale guaranteed payment of the $55,000 or, alternatively, of any funds remaining unpaid of the total amount due on both loans.

incorporating such a joint statement. Otherwise, the court will keep the current trial schedule in place.[8]

IV. **Conclusion**

For the reasons expressed above, Hale's motions for leave to file an amended answer and counterclaim and for leave to file a cross-motion for summary judgment (ECF Nos. 32, 64) are **GRANTED,** and the parties' motions for summary judgment (ECF Nos. 57, 65) are **DENIED.**

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record.

**IT IS SO ORDERED** this 28th day of September, 2021.

ENTER:

*David A. Faber*
David A. Faber
Senior United States District Judge

---

[8] Because neither party demanded a jury trial, the court will hold a bench trial.